BOYER (SHEEPSHANKS v.). See Case No. 12,741.

BOYER (STUART v.). See Case No. 13,553.

BOYER (UNITED STATES v.). See Case No. 14,633.

## Case No. 1,755.

### BOYER v. The WISCONSIN.

[See Case No. 6,317.]

## Case No. 1,756.

### BOYER v. The WISCONSIN and The HECTOR.

[23 Betts, D. C. MS. 123;. 46 Fed. 864.][1]

District Court, S. D. New York. Feb. Term, 1857.[2]

COLLISION—TOW AND LIGHTER—LIABILITY OF TUG —OF TOW—DAMAGES.

[1. A partially loaded lighter propelled by oars, while moving on slack water at beginning of ebb tide, at a rate of one mile an hour or less, and proceeding to a pier, was met by a tow consisting of a ship lashed to the side of a tug which was making for the same pier. Warning sufficient to have enabled the tow to avoid the disaster was given by the lighter. *Held*, that the tow was liable for the injuries sustained by the lighter.]

[See The Hector, Case No. 6,317.]

[2. A ship towed by a steamer lashed to her side is chargeable for injuries occasioned by her striking, while under way, another vessel.]

[See The Hector, Case No. 6,317; The Carolus, Id. 2,424.]

[3. It appeared that the ship's company had sole charge of her helm and sails, and that directions for the concurrent navigation of both vessels were given by the master of the tug, the

---

[3] [Reported by Hon. William Cranch, Chief Judge.]

[1] [46 Fed. 864, contains only a partial report.]

[2] [Affirmed by circuit court as to The Hector, and reversed as to The Wisconsin, in The Hector, Case No. 6,317, and by supreme court in Sturgis v. Boyer, 24 How. (65 U. S.) 110.]

helm of the ship being employed to aid the common navigation, and that neither vessel had any movement or action separate from the other. *Held*, that both ship and tug were liable for the damage to the lighter as joint tort feasors.]

[Cited in The Express, 46 Fed. 862.]

[See The *Hector*, Case No. 6,317.]

[4. The direct effect of the collision being to cast the cargo overboard, the vessels were likewise jointly liable for the loss thereby sustained.]

[In admiralty. Libel by Herman Boyer, owner of the lighter Republic, against the ship Wisconsin and the tug Hector for damages sustained by collision. Decree for libellant.]

BETTS, District Judge. This cause having been appealed by the claimants to the circuit court, it is proper to state more fully the reasons upon which the decision was founded than are expressed in the rough notes prepared for the use of the reporter, and communicated to the parties at the time of the decision. The action is brought by the owners of the lighter Republic to recover damages sustained by the lighter and her lading of flour, in their charge as common carriers, by means of a collision on the East river with her on the 15th of October, 1855. The proofs on neither side coincide exactly with the pleadings of the parties who produced them, and are in violent disaccord in the representations of the transaction as between the adversary parties, but I think the gravamen of the suit is supported by a satisfactory preponderance of evidence. The libel alleges that the lighter Republic, with half a load or more of flour on board in barrels, was in possession of the libellants on the 15th day of October, and was on her passage about twelve o'clock at noon, proceeding with said flour, propelled by oars between pier No. 6, East river, and the foot of Dover street, in this city, at the rate of one mile or less the hour, and had arrived at a point nearly opposite the foot of Dover street, headed towards Dover street pier, still moved at a very slow rate by her oars alone; and when in such position the ship Wisconsin, in tow of the steamboat Hector, lashed to the larboard side of the steamer, came down the river, and was so negligently managed that the jib or flying jibboom of the ship struck the lighter, thereby capsizing her, and rolled her cargo into the water, and the same as well as the lighter was greatly damaged; that at the time of the collision there was no wind of any consequence, the tide was there about slack water, and the day was clear; and that the ship was then in charge of stevedores and not mariners, and was propelled by the steamboat lashed alongside her; that the lighter was in plain sight of the ship and steamboat, and might and ought to have been avoided by them; that every possible exertion was made by those on board the lighter to avoid the collision, by signals and hailing, &c. The libel further avers that the

collision was not caused by any fault, neglect or want of care of those on board the lighter, but was caused by negligence, want of care and skill on the part of those in charge of the said tow, in that among other things they were out of the proper place, were incompetently manned, had no proper lookout and disregarded the warnings on the part of the lighter, and did not in due time stop and back the steamboat's engines, or steer the said tow so as to avoid the lighter, as they were bound to have done. Damages are claimed, by reason of the premises, to the amount of $2,100 and upwards.

Separate answers were filed on the part of the ship and the steamboat by different proctors. The owners of the ship deny all knowledge or information respecting various statements of the libellant, and aver others to be falsely alleged, and charge the facts to be that on the said 15th day of October the ship left the pier at the head of Cherry street in the East river in this port, in tow of and securely lashed to the starboard side of the steamboat Hector, between her and the New York shore, and proceeded down the East river for the purpose of mooring alongside the ship William Rathbone, then lying at the foot of Dover street. That the ship during all the time was in the charge of and under the control and management of the captain and officers of the said tug, and at the same time had on board of her the mate, helmsman and a full complement of mariners belonging to the ship, but all under the control and direction of the captain and officers of the said tug. That the tug had also on board a good, sufficient and competent master, officers and crew; that at about noon of that day, the day being clear, the wind blowing a moderate breeze from the west (about a three knot breeze), and the tide setting up the river at the rate of about one mile an hour, the tug, while proceeding down the river with said ship in tow, and at a distance of about 100 yards above the foot of Dover street, and 150 yards from the New York shore, put her helm and the helm of the ship hard aport, and stopped her engine for the purpose of coming at the foot of Dover street. Soon after the lighter was seen from the tow quartering across the river with the current at an angle of 45 degrees and at a distance of about 300 yards from the New York shore, and 400 yards from the tow, and 200 yards outside of the tow (with all sheets off) under jib and mainsail, moving at the rate of about 4 miles an hour. That immediately, therefore, orders were given, and the tug was backed hard, and the helms of the tug and ship both put and kept hard aport, and the tug was kept backing with all the power of her engine till the tow came to a dead stop about 75 yards from the New York shore, about opposite the foot of Dover street, when the lighter, pursuing her course as aforesaid with all sheets off, without any change, and carrying jib and mainsail set, and endeav-

oring to cross the bows of the tow, caught her peak halyards upon the end of the flying jibboom of the ship, and by means of her motion drew herself down upon her side, and caused the collision and injury complained of. That the lighter, from the time of coming in sight of the tow, in no manner changed her course or slackened her speed or did any act whatever to avoid the collision, which collision she might easily have avoided by lowering or dropping her peak halyards according to the usage of vessels in such circumstances; and that the collision occurred solely through the unskillfulness, negligence, fault, and bad management on board the lighter.

The owner of the tug answered for himself, and averred that the steam tug Hector was on the said 15th of October employed by the owners of the ship Wisconsin to tow the ship from the foot of Water street, East river, to the pier or slip at foot of Dover street aforesaid, and that the ship then was, and until towed and made fast to said pier continued, in charge of a skillful and competent captain and crew; that the tug and her crew were merely the motive power to move said ship to said pier, and were subject to and obeyed the orders of the captain and officers in charge of said ship while attached to her, and were subject to and obeyed all such orders, before, at and after the time of the accident or collision mentioned in the libel; and prays a decree of indemnity against the ship for any damages which may be imposed upon the tug by reason of the collision. The answer charges the negligence and misconduct of the lighter, substantially in the terms used in the answer for the ship, to have been the occasion of the collision, and avers that the lighter approached the tug when she was endeavoring to put the ship into her berth by letting her sag into the slip at the foot of Dover street, the helm of the ship being aport, and the engines of the tug stopped, and as soon as the lighter was seen approaching the tow the engine was backed, and continued backing for more than three minutes before the lighter touched the ship, and the ship and tug were perfectly stationary or moving backward from the lighter.

The answers, with the libel, present these issues: (1) Whether the injuries received by the libellant in the collision in question were occasioned without his misfeasance or culpable negligence; (2) whether, if the collision was wrongful in respect to the libellant, the act was a concurrent one of the ship and tug, for which both vessels are responsible in common as well as separately; and (3) whether, in case of recovery, the libellant is entitled to also include in his losses the injury received by the cargo laden on board the lighter, and thrown overboard into the water by reason of the collision.

A thoroughly searching examination of the facts attending the condition, management, and movements of the lighter, the ship and steamboat on the occasion in question was made by the parties on both sides on the trial of the cause. In my judgment the result of all the evidence very satisfactorily exonerates the owner of the lighter from all blamable conduct or neglect on his part, conducing to the collision. She was rightfully pursuing her course to her berth, having no headway beyond what was obtained by use of her sweeps, with a slack water, and gradually subsiding upon a beginning ebb; that all reasonable efforts were made on board her to give notice of her condition to the ship and steamboat, and to work her out of the danger of their approach upon her, and that she was without any means at her control to protect herself from them. This conclusion is not deduced from any balancing and entangled theories of witnesses, but is rested upon the direct and positive testimony of those concerned in or present at the occurrence, and their evidence, in my judgment, proves there was nothing legally exceptional in the management of the lighter, or the acts of omission of those on board her. The competency of the libellant to maintain the action must therefore be deemed established.

The second inquiry demands a consideration of the proceedings by the ship and steamboat, and whether they are chargeable with culpable acts of omission or commission, of a character to render them jointly responsible to the libellant for the injuries he sustained from them. In my opinion the balance of testimony proves the tow was approaching the lighter further out in the river from the New York piers than the lighter, she and the tow aiming to come to nearly at the same point. It was mid-day and there was no impediment in the river to a clear view of the position and course of the lighter by those navigating the tow, and warning was given the tow from the lighter time enough to enable the tow to have stopped her way or diverged from it sufficiently to secure the safety of the other vessel. The differing opinions of the witnesses as to the motion of the tide at the time of collision, and also as to the headway of the respective vessels, seem to be controlled by the fact that the barrels of flour thrown into the river by the upsetting of the lighter floated down the stream. Upon that condition of things it is manifest that the exercise of reasonable diligence and caution on the part of the manager of the tow, when they ought to have been aware they could not prudently attempt to make her berth by going ahead of the lighter, throws upon the tow the responsibility for all damages inflicted upon the latter by reason of continuing that movement. The injured party in case of collision has, as a general principle, a right to hold the vessel which is the direct and immediate cause of the wrong answerable to him for it (The Neptune, 1 Dod. 467;)

and this without regard to the question of the present participation of the owner of the colliding vessel in the culpable acts. When she is in motion in the pursuit of her lawful calling she carries with her the responsibility of her owner for the acts of his agents to whom she is entrusted to the same extent as if she was under his personal directions. Abb. Shipp. pt. 3, c. 1. Nor does it matter whether the propulsion is by the agency of sails or sweeps, or that of steam tugs fastened to her and used to the same end, because the steam power thus applied may be justly regarded only a substitute for other physical means of navigation. Reeves v. The Constitution [Case No. 11,-659]; Olc. 258 [The Express, Case No. 4,-598]. A ship under towage by a steamer lashed to her side is chargeable for damages wrongly occasioned to another vessel by striking her whilst under way, against her. The Carolus [Case No. 2,424].

The answers filed respectively by the owners of the ship and the tug are in direct conflict upon the question whether the navigation of the tow was under the control of the officers of the one vessel or the other, it being averred for the ship that she was exclusively in the hands and under the command of the officers of the tug at the time of the collision, and asserted on the part of the tug, with equal positiveness, that she was placed under the exclusive orders and control of the ship, and was employed solely for the purpose of supplying the motive power for transporting the ship from one pier to the other, and the tug and her crew were therein subject to and obeyed the orders of the master and officers of the ship alone. It is unnecessary to speculate upon the consequences that would legally follow the establishment of that defence, because, in my opinion, the testimony does not show that either vessel was strictly * * *[3] in the course pursued in its navigation, but, on the contrary, the officers of both took active and efficient parts in directing and controlling the movements of the tow. I am inclined to consider the primary responsibility rested upon the ship, she being the vessel actually colliding upon the lighter; but I also hold the tug was responsible for the direction given the ship through the agency of her officers concurring with those of the ship.

This court decided in the case of The Express [Case No. 4,598], the tow being separated from the tug, and coming in contact with another vessel by her own fault, was liable for the damages thus inflicted in a suit against her alone; and although the decision was reversed on appeal upon a new state of facts proved in the circuit court fixing the fault wholly upon the tug [Id. 4,596], yet that doctrine was explicitly adopted by Judge Nelson. He says: "In all such cases

at least there exists a common obligation by the tug and tow to make every reasonable effort to avoid the danger and a common responsibility in case of neglect." In that case the appellate court corrected the decision below, because the liability was imposed by its judgment on the tow when the culpable acts were committed by the tug solely without any faulty concurrence on the part of the tow, upon the declared principle that both vessels were under a common obligation in their respective positions to employ every reasonable effort to avoid damage, as under a common responsibility for it in case of faulty omission to do so. Id. 4,596. The contingency anticipated in that decision comes in this case. The ship and the tug were united together and were moved as one body. The ship's company had sole charge of her helm and sails, and the master of the tug gave directions from her deck, concurrently for her navigation and that of the tug, and the helm of the ship was employed to aid in the common navigation of the two vessels. Neither of the two, as they were connected and conducted, had any movement or action separate from the other, both employed concurrently the means at their command to a common end, and it cannot be said therefore for the ship, if the fact be of any moment in this case, that she did not participate with the tug in any voluntary action producing the collision. The admiralty court in Lower Canada (The John Counter, [Stuart's Adm. 344,] held the steam tug exclusively responsible for a collision of her tow with another vessel, when the tow was hauling by a line clear of the tug, and the damage was caused by the sole fault of the tug, although she did not come in contact with the injured vessel. In The Carolus [Case No. 2,424] Judge Curtis adjudged the colliding ship propelled by a tug answerable for a collision made by her, when the tug was not joined in the suit, without raising a question as to the liability of the ship. In the circuit court of Pennsylvania a distinction is taken, which I do not meet with in any other adjudication, between responsibilities for collisions when small steam tugs are employed to tow large vessels, and large tugs are engaged in towing small craft, barges, etc. In the first class of cases, when injuries occur to other vessels by collision with a large tow through the misfeasance or culpable inattention of the tug, the consequences are made chargeable exclusively upon the ship, the tug being regarded as her servant, or agent, acting under her authority, and that no suit for collision can be sustained against the tug for damages so accruing from collision by her tow. Smith v. The Creole [Case No. 13,033]; The Sampson [Id. 12,280]. The entire navigation and movements of the two vessels is held to be at the risk of the ship. The principles of those rulings would apply to this present case, and would fasten on the ship the lia-

---

[3] [Missing word or words cannot be supplied from the manuscript.]

bility for the damages inflicted upon the lighter.

I am impressed with the persuasion that the true doctrine subjects both the tug and tow to responsibility to another vessel for injuries inflicted upon it by the joint action of the two by means of their common fault. I am no way convinced that the marine law dispenses either from liability to others for their mutual acts of misfeasance or omission upon navigable waters, as upon that area it is most important to the safe transportation of persons or property, that every vessel propelling herself or another by motive powers within herself, or invoking or using such motive power supplied by another, should be accountable for the consequences of an injurious misuse of such locomotion to the same extent as when she is acting separately and alone. It enures to the general security that the risk of such connection with such extraneous agency shall be imposed upon the parties so employing it, and that those suffering from its use should be entitled to indemnity therefrom against all the actors concerned in the wrong. A case decided in this court in June term, 1855, by Judge Ingersoll, is cited as establishing a different rule, and exonerating the tug and imposing the loss upon the barge in tow on her side when a collision was caused in their movements. Chase v. Creary [Case No. 2,626]. I have obtained a clearer statement of that case from the files of the court, and find that the question mooted in this case could not have appropriately arisen in that. The owners of a lake boat in tow alongside a tug (The Catherine) was met and run against on the East river by another small boat or barge in tow alongside a tug (The Birkbeck), and a collision ensued between the lake boat and the barge, and an action in personam was presented by the libellants against the owners of the Birkbeck and of the tug Catherine, to recover the damage so incurred. The court dismissed the libel as to the owner of the Catherine, and awarded damages against the owner of the Birkbeck. If the points involved in the present case were brought in discussion on the hearing or decision of that case it could have been argumentatively only, and the decision necessarily would not affect the question in issue here.

In my judgment, upon the facts in proof before the court, both the ship and tug were guilty actors in the tort committed upon the lighter, and the libellants are entitled to their recompense from the joint tort-feasors to the amount of the loss so sustained. The loss embraces the damage sustained by the cargo equally with that inflicted upon the vessel. The direct effect of the collision was to cast the flour overboard into the river, subjecting some to immediate destruction and all the residue to greater or less deterioration, and the wrong-doing party is bound to make good the whole loss of the suffering one. Abb. Shipp. 311; The Gazelle, 2 Wm. Rob. Adm. 279; Williamson v. Barrett, 13 How. [54 U. S.] 101. The libellant is accordingly entitled to a decree for a sum sufficient to recompense the injury done the lighter, and also to the cargo on board, with the salvage or expense of recovering the cargo forced overboard. The Narragansett [Case No. 10,020]; The Rhode Island [Id. 11,745].

An order of reference to a commissioner to ascertain and report the damages to be entered.

[NOTE. Decree of the district court affirmed by the circuit court in The Hector, Case No. 6,317, as to the Hector, but reversed as to the Wisconsin, and decree of the circuit court affirmed by the supreme court in Sturgis v. Boyer, 24 How. (65 U. S.) 110.]